UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JARED RENE,

                Plaintiff,

        v.

TOWN OF GREECE, WILLIAM D.
REILICH, in his capacity as Town
Supervisor, MICHELLE MARINI, in her
capacity as former Deputy Town Supervisor,
and MICHAEL WOOD, in his official
capacity as Chief of Police,

                Defendants.
_____

**DECISION AND ORDER**

6:24-CV-06208 EAW

## **INTRODUCTION**

Plaintiff Jared Rene ("Plaintiff") alleges that defendants Town of Greece, Greece Town Supervisor William D. Reilich ("Reilich"), Greece Deputy Town Supervisor Michelle Marini ("Marini"), and Greece Police Department Chief of Police Michael Wood ("Wood") (collectively "Defendants") retaliated against him for objecting to and reporting misconduct by Town of Greece officials in violation of his constitutional and state law rights. (Dkt. 1).

Presently before the Court is Defendants' partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 10). For the reasons that follow, Defendants' motion is granted in part and denied in part. The first cause of action is dismissed and the second cause of action is dismissed as asserted against Reilich, Marini,

- 1 -

and Wood, but the motion is denied as to the second cause of action as asserted against the Town of Greece.

## BACKGROUND

### I. Factual Background

The instant facts are taken from Plaintiff's complaint. (Dkt. 1). As required at this stage of the proceedings, Plaintiff's factual allegations are taken as true.

Plaintiff was employed by the Greece Police Department ("GPD") beginning in 2009, and in 2014, was promoted to the position of GPD Sergeant. (*Id.* at ¶ 15). In the Spring of 2021, Plaintiff learned that the Town of Greece was withdrawing support it had provided for events in "minority communities." (*Id.* at ¶ 31). Plaintiff believed that the Town's policy changes, including an increase in the established permit fees for an event in a predominantly minority community, would result in disparate and unfavorable treatment of Greece's minority communities. (*Id.* at ¶¶ 32, 22, 24). Plaintiff objected to these policies and complained to his supervisor and community leaders. (*Id.* at ¶ 36). Plaintiff's criticisms and reporting of the discriminatory policies were separate from his official job duties. (*Id.* at ¶ 37). In late September 2021, Plaintiff was advised that Marini and Reilich heard about Plaintiff's comments and were furious and wanted GPD Chief Andrew Forsythe to take action against Plaintiff. (*Id.* at ¶ 41).

On or about October 21, 2021, Chief Forsythe crashed his fleet vehicle while under the influence of alcohol. (*Id.* at ¶ 44). Marini directed Chief Forsythe to conceal the crime and did not report the crash or presence of alcohol to any proper authorities. (*Id.* at ¶ 47). On or about October 26, 2021, Plaintiff reported to a supervisor that Marini had not

provided all accurate information to the GPD and had approved misinformation provided to the press. (*Id.* at ¶¶ 53, 54). On October 27, 2021, Plaintiff's supervisor informed Plaintiff that Plaintiff was temporarily relieved of certain duties at Marini's direction and Plaintiff was given a less favorable assignment. (*Id.* at ¶¶ 55, 57, 58). On December 8, 2021, Plaintiff provided testimony to a Special Deputy Chief concerning the investigation of the motor vehicle accident. (*Id.* at ¶ 63). Plaintiff's testimony provided evidence that Marini had been involved in or directed the concealment of crimes and misconduct. (*Id.* at ¶ 65).

Plaintiff's complaints regarding the policies with disparate impacts on minority groups and about Marini's misconduct in connection with the car accident made him a whistleblower entitled to protection from retaliation. (*Id.* at ¶ 72). On December 21, 2021, a report into Chief Forsythe's accident was issued and even though Plaintiff had provided testimony regarding Marini's failure to accurately report details from the crash, the report found Plaintiff guilty of failing to report details of the crash. (*Id.* at ¶ 78). As a result, Plaintiff received the first reprimand of his career. (*Id.* at ¶¶ 79, 80). Thereafter, other unfounded disciplinary action was taken against him to retaliate against Plaintiff and impugn his reputation and credibility. (*Id.* at ¶¶ 107, 108, 125, 157). On September 22, 2023, because Plaintiff was unable to continue to work under these circumstances and for the sake of his health and family, Plaintiff resigned from the GPD. (*Id.* at ¶ 163).

After his resignation, Plaintiff applied for a position with a different law enforcement department. (*Id.* at ¶ 164). As part of the background check, the new employer requested to review Plaintiff's personnel file and when the personnel file was

released, it contained documents added to it after Plaintiff's resignation, including notes regarding the opening of two internal affairs investigations, which were not opened while Plaintiff was at the GPD. (*Id.* at ¶¶ 165, 167, 168, 169). On October 31, 2023, Chief Wood sent an email to the entire GPD that insinuated that Plaintiff was dishonorable and had broken the law. (*Id.* at ¶ 191). In addition to a violation of Plaintiff's civil rights, the Town of Greece also violated wage and hour laws by failing to pay overtime hours. (*Id.* at ¶ 195).

In his complaint, Plaintiff asserts claims for (1) violations of N.Y. Civil Service Law § 75-b against all Defendants, (2) violations of 42 U.S.C. § 1983 against all Defendants, and (3) violations of the Fair Labor Standards Act against the Town of Greece.

## II. **Procedural Background**

Plaintiff commenced this action against Defendants on April 9, 2024. (Dkt. 1). Defendants filed the instant motion to dismiss the first and second causes of action on June 6, 2024. (Dkt. 10). On June 20, 2024, Plaintiff filed his opposition. (Dkt. 11). On June 27, 2024, Defendants filed their reply. (Dkt. 12). On November 13, 2024, the Court heard oral argument. (Dkt. 14). The Court granted leave for the parties to file supplemental submissions, but only Defendants provided an additional memorandum. (Dkt. 15).

## DISCUSSION

I.   **Legal Standards**

A.   **Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction and possess only that power authorized by Article III of the United States Constitution and statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation and alteration omitted). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it. . . ." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l,* 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted).

"When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998). "But '[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) (citations omitted). Under those circumstances, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

**B.     Rule 12(b)(6)**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. Defendants' Motion to Dismiss the First Cause of Action

"To state a claim under New York Civil Service Law section 75-b, a plaintiff must allege: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [he] reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action." *DeFranco v. New York Power Auth.*, No. 20-CV-1861-LJV, 2024 WL 1621533, at *10 (W.D.N.Y. Apr. 15, 2024) (quoting *Rusk v. New York State Thruway Auth.*, 37 F. Supp. 3d 578, 600 (W.D.N.Y. 2014)).

As an initial matter, while the first cause of action is asserted against all Defendants, Plaintiff's counsel conceded at oral argument that the claims against the individual defendants could not proceed because a Civil Service Law § 75-b claim "only provides a cause of action against government entities, not individuals." *Rivera v. New York City Dep't of Educ.*, No. 21CV6134ENVTAM, 2023 WL 2563665, at *14 (E.D.N.Y. Feb. 3, 2023) (quoting *Fry v. McCall*, 945 F. Supp. 655, 666 (S.D.N.Y. 1996)).

As for the § 75-b claim as asserted against the Town of Greece, it fails because Plaintiff did not file a notice of claim and, accordingly, this Court lacks jurisdiction. New York law requires a notice of claim as a mandatory precondition to pursuing certain claims against a municipality. *Grant v. City of Syracuse*, No. 5:15-cv-445, 2017 WL 5564605, at *10 (N.D.N.Y. Nov. 17, 2017); *Washington v. City of New York*, 190 A.D.3d 1009, 1010 (2d Dep't 2021) ("To enable authorities to investigate, collect evidence and evaluate the merit of a claim, persons seeking to recover in tort against a municipality are required, as

a precondition to suit, to serve a Notice of Claim." (citations omitted)).  It is undisputed that "state notice-of-claim statutes apply to state-law claims asserted as pendant claims in a federal action."  *Singletary v. Allen*, 431 F. Supp. 3d 126, 129 (W.D.N.Y. 2019) (quotation and citation omitted).  "[F]ailure to comply with the notice-of-claim rules deprives the court of jurisdiction."  *Packard v. City of New York*, No. 15CIV7130(AT)(RLE), 2017 WL 11580855, at *2 (S.D.N.Y. July 17, 2017); *Kearse v. Aini*, No. 19-CV-1579V(SR), 2023 WL 2615894, at *3 (W.D.N.Y. Jan. 31, 2023) ("[F]ederal courts do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim."), *report and recommendation adopted*, 2023 WL 2612581 (W.D.N.Y. Mar. 23, 2023).

Here, it is undisputed that Plaintiff did not file a notice of claim, but he disputes whether one was required for his § 75-b claim against the Town of Greece.  Admittedly, the case law is inconsistent as to whether New York General Municipal Law §§ 50-e and 50-i require a notice of claim when pursuing a § 75-b claim against a municipality.  *See, e.g.*, *Long v. Byrne*, No. 1:24-CV-00466 (MAD/CFH), 2024 WL 4710695, at *6 n.4 (N.D.N.Y. Nov. 6, 2024) ("The Court notes that even if it decided to retain jurisdiction over Plaintiff's Section 75-b claim, such claim would likely be subject to dismissal for failure to file a notice of claim."); *Morales v. City of New York*, No. 14-CV-7253 (JGK), 2016 WL 9651130, at *7 (S.D.N.Y. Aug. 9, 2016) ("Pursuant to New York General Municipal Law §§ 50-e, 50-i, a plaintiff who brings a claim under § 75-b must serve a notice of claim upon the defendant within ninety days of the underlying violation."); *c.f.*

*Rissetto v. Clinton Essex Warren Washington Bd. of Coop. Educ. Servs.*, No. 8:15-CV-720, 2017 WL 4326070, at *2 (N.D.N.Y. Sept. 27, 2017) ("The Court agrees that New York State precedent directs that a notice of claim is not required for a Civil Service Law § 75-b claim." (citing *Castro v. City of New York*, 141 A.D.3d 456 (1st Dep't 2016)); *Glaves-Morgan v. City of New York*, No. 11 CV 1248 HB, 2012 WL 1097288, at *1 (S.D.N.Y. Apr. 2, 2012) (denying summary judgment because Defendants did not show that a notice of claim was required for 75-b claim).[1]

But as raised at oral argument, irrespective of the General Municipal Law requirements, Town Law § 67 applies more broadly and requires the filing of a notice of claim as a condition precedent for any claim "for damages for wrong or injury to person or property or for the death of a person. . . ." In other words, General Municipal Law §§ 50-e and 50-i do not "provide the *only* notice of claim criteria. . . ." *Arnold v. Town of Camillus*, 222 A.D.3d 1372, 1374 (4th Dep't 2023). As explained by the Fourth Department in *Arnold*:

> Town Law § 67 broadly applies to any claim against a town defendant for damages in five categories: (1) for wrong to person; (2) for injury to person; (3) for wrong to property; (4) for injury to property; and (5) for the death of

---

[1] In 2015, the New York State Court of Appeals held in that a notice of claim was not required under General Municipal Law §§ 50-e and 50-i to pursue a cause of action for violations of New York State's Human Rights Law because such a claim was not a tort action under § 50-e and not a "personal injury, wrongful death, or damage to personal property claim[] under section 50-i." *Margerum v. City of Buffalo*, 24 N.Y.3d 721, 730 (2015). By analogy, some courts have concluded that "[i]n light of *Margerum*, we now find that a notice of claim is not required for a Civil Service Law § 75-b claim." *Castro v. City of New York*, 141 A.D.3d 456, 458 (2016). The Court would likely agree with this conclusion if it needed to reach the issue, but it need not do so because, as discussed further, General Municipal Law §§ 50-e and 50-i are not dispositive as to whether a notice of claim is required to pursue a § 75-b claim against a town.

- 9 -

> a person (see Town Law § 67 [1]). By contrast, General Municipal Law § 50-i requires a notice of claim only for those actions involving claims "for personal injury, wrongful death or damage to real or personal property" (General Municipal Law § 50-i [1]).

*Id.* at 1375; *see also Sager v. Cnty. of Sullivan*, 145 A.D.3d 1175, 1176-77 (3d Dep't 2016) ("Plaintiff's reliance on appellate decisions involving complaints asserting a Civil Service Law § 75-b []against cities, in which the courts have ruled that the filing of a notice of claim is not required . . ., is misplaced. The cases cited by plaintiff involve claims against cities to which the more narrow notice of claim provisions of General Municipal Law §§ 50-e and 50-i apply, limiting the requirement for notices of claim to "tort" claims . . . or claims for personal injury, wrongful death or damage to real or personal property. . . . By comparison, County Law § 52 applies to the claim against defendant, the County of Sullivan, and mandates notices of claim in a much broader scope of matters than the General Municipal Law." (quotations and citations omitted)).

Plaintiff's first cause of action alleging violations of § 75-b plainly seeks damages for "wrong to [a] person." As part of his first cause of action, Plaintiff alleges that he "suffered adverse personnel actions" as a result of "his reports of racial discrimination and [] Marini's attempt to conceal a crime," (Dkt. 1 at ¶ 218), that "he was removed from his role as Public Information Officer and reassigned," (*id.* at ¶ 219), that the programs Plaintiff had worked on were "defunded, deprioritized and/or shut down," (*id.*), that Plaintiff's wages were impacted (*id.* at ¶ 223), and that he suffered other wrongs (*id.* at ¶¶ 224-233). Thus, a notice of claim had to be filed pursuant to Town Law § 67 prior to commencement of this lawsuit. Plaintiff's failure to do so means this Court lacks jurisdiction.

Indeed, the Court invited the parties to provide supplemental submissions as to the applicability of Town Law § 67 and whether it barred Plaintiff's § 75-b claim in the absence of a notice of a claim. Defendants filed a supplemental memorandum (Dkt. 15), but Plaintiff failed to file anything, implicitly conceding the issue. *See Jones v. Pawar Bros. Corp.*, 434 F. Supp. 3d 14, 20 n.4 (E.D.N.Y. 2020) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014))).

Accordingly, Defendants' motion to dismiss Plaintiff's Civil Service Law § 75-b claim is granted and the claim is dismissed without prejudice.

## III. Defendants' Motion to Dismiss the Second Cause of Action

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

### A. Claim Against Individual Defendants in Official Capacities

As a threshold matter, Defendants argue that Plaintiff's § 1983 retaliation claim against the individual defendants, sued only in their official capacities, is duplicative and

subject to dismissal. After some prevaricating during the oral argument when questioned on the issue, Plaintiff's counsel ultimately conceded that the claims against the individuals had been improperly pleaded.

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citation omitted). Accordingly, Plaintiff's official capacity claims against the individual defendants—the only claims he has asserted against them—are coextensive with his claims against the Town. *Long v. Cnty. of Orleans*, 540 F. Supp. 3d 344, 350 (W.D.N.Y. 2021). Defendants' motion to dismiss Plaintiff's official capacity retaliation claims against the individual defendants is granted.

### B. Claim Against Town of Greece

To state a plausible claim for First Amendment retaliation, a plaintiff must allege: "(1) his speech or conduct was protected by the First Amendment; (2) [Defendants] took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Persaud v. City of New York*, No. 1:22-CV-02919 (MKV), 2023 WL 2664078, at *4 (S.D.N.Y. Mar. 28, 2023) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)); *see also Searle v. Red Creek Cent. Sch. Dist.*, No. 21-CV-6086-FPG, 2021 WL 5086405, at *4 (W.D.N.Y. Nov. 2, 2021) ("The elements of a First Amendment retaliation claim are dependent on the 'factual context' of the case." (citation omitted)).

As to the first element, the Supreme Court in *Lane v. Franks*, 573 U.S. 228 (2014), outlined a two-step inquiry into whether a public employee's speech is entitled to protection:

> "The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public."

*Id.* at 237 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see also Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82-83 (2d Cir. 2022) ("So in assessing the first prong of the retaliation test–whether a public employee's speech is protected–we must consider 'two separate subquestions': (1) whether the employee spoke as a citizen rather than solely as an employee, and (2) whether he spoke on a matter of public concern. . . . If either question is answered in the negative, our inquiry may end there. If both questions are answered in the affirmative, we may proceed to consider whether the employer had an adequate justification for treating the employee differently from any other member of the general public based on the government's needs as an employer." (citations and quotations omitted)); *DiFonzo v. Cnty. of Niagara*, No. 1:22-CV-588, 2023 WL 1801695, at *5 (W.D.N.Y. Feb. 7, 2023) ("A public employee's speech 'is protected by the First Amendment only when the employee is speaking as a citizen . . . on a matter of public concern.'" (quoting *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012)) (internal quotation marks omitted)); *Cecchini v. Schenck*, No. 3:14-CV-1704 (MPS), 2017 WL 902849, at *9 (D. Conn. Mar. 7, 2017) ("To determine if a public employee's speech is protected by the

First Amendment, courts must consider '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee.'" (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011))).

Defendants argue that none of Plaintiff's statements at issue constitute constitutionally protected speech because at the time the statements were made, Plaintiff was not speaking as a citizen, but solely as an employee. They argue that to the extent Plaintiff expressed concerns about disparate or unfavorable treatment of minority communities, it was within his professional responsibility to do so as a designated representative of the GPD in the community. Similarly, as to any statements made by Plaintiff regarding the car accident, Defendants contend that those statements were made in Plaintiff's official capacity as a police officer. At this stage of the proceedings, the Court disagrees. Plaintiff has alleged that his speech was made as a private citizen on matters of public concern and that the mere fact that his job involved work in the community does not transform all of his speech relating to the community into government speech. These allegations suffice to state a plausible First Amendment retaliation claim that the statements at issue related to matters of public concern.

Next Defendants argue that even if Plaintiff's statements are constitutionally protected speech, he cannot establish causation. A causal connection between the protected interest and adverse action is shown when a plaintiff pleads that "the protected speech was a substantial motivating factor in the adverse action." *A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 269 (N.D.N.Y. 2022); *see also Sutton v. Stony Brook Univ.*, No. 18-CV-7434(JS)(ARL), 2021 WL 3667013, at *10 (E.D.N.Y. Aug. 18, 2021) ("With regard to the

causal connection element, to survive a motion to dismiss, a plaintiff must allege facts to show that the adverse action would not have been taken absent the plaintiff's protected speech."). "A plaintiff may prove causation by, among other things, showing that the adverse employment decision and the protected activity were close in time. . . ." *Specht v. City of New York*, 15 F.4th 594, 605 (2d Cir. 2021) ("[The Second Circuit has] previously found the passage of up to six months between an adverse action and protected activity sufficient to permit an inference of causation.") (citations omitted); *Potrzeba v. Sherburne-Earlville High Sch. through Sherburne-Earlville Cent. Sch. Dist. Bd. of Educ.*, No. 3:23-CV-191 (BKS/ML), 2023 WL 8827178, at *8 (N.D.N.Y. Dec. 21, 2023) ("In some circumstances, a plaintiff may plausibly allege a causal connection by showing that protected activity was close in time to the adverse action, though there is no bright line as to how close in time the events must be. . . .  Rather, the court must exercise judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases . . . and may take into account the sufficiency of other allegations in determining whether a plaintiff has plausibly alleged a causal connection between the conduct and the adverse action[.]" (citations and quotations omitted)).

Defendants argue that any alleged adverse employment actions ultimately suffered by Plaintiff are unrelated to any events in 2021, making the requisite causation lacking. But the standard at this stage of the proceedings requires the Court to accept Plaintiff's version of events as true, and Plaintiff alleges a continuous and ongoing pattern of retaliatory actions in response to his protected speech.  Under the circumstances, Defendants' position that the Court should parse out each alleged incident of protected

speech and compare it to the alleged adverse actions, is unreasonable. Because the fact-specific questions raised by Defendants are not appropriately subject to resolution by the Court on the instant motion, Defendants' motion to dismiss this claim against the Town of Greece is denied.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. Specifically, Plaintiff's New York Civil Service Law § 75-b claim is dismissed without prejudice for lack of subject matter jurisdiction because Plaintiff failed to file a notice of claim as required by Town Law § 67. Plaintiff's retaliation claim is dismissed against the individual defendants in their official capacities but may proceed against the Town of Greece. The Clerk of Court is directed to terminate the individual defendants as parties in this action. The Town of Greece shall file an answer in accordance with the Federal Rules of Civil Procedure.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: November 26, 2024
      Rochester, New York